## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SCOTT D. GRIGSBY,

                Plaintiff,

      v.

DANIEL P. DRISCOLL, Secretary of the Army,[1]

             Defendant.

Case No. 18-cv-792 (JMC)

## MEMORANDUM OPINION

Plaintiff Scott Grigsby challenges a decision by the Army Board for Correction of Military Records (ABCMR), in which the ABCMR rejected Grigsby's request to remove a non-punitive letter of reprimand from his permanent military personnel file. Grigsby was reprimanded by U.S. Army Reserve Brigadier General William Gothard for conduct that occurred while Grigsby was on active duty but that was only discovered after he retired. Grigsby applied to the ABCMR to remove the reprimand, known as a general officer memorandum of reprimand (GOMOR) from his permanent military personnel file, but the ABCMR denied the application.

This case is before the Court on cross-motions for summary judgement. Grigsby argues that the ABCMR's decision was deficient under the Administrative Procedure Act (APA) because Gothard's issuance of the GOMOR exceeded his authority, deprived Grigsby of procedural protections under Army regulations, and was otherwise untimely. The Court finds that Grigsby has waived these arguments by failing to present them to the ABCMR in the first instance. Further, Grigsby's new arguments do not provide grounds to find that the ABCMR violated the APA by

---

[1] The current Secretary of the Army has been substituted for his predecessor in office pursuant to Federal Rule of Civil Procedure 25(d).

failing to identify and correct an error or injustice clearly presented in the record. Accordingly, the Court will **GRANT** Defendant's motion for summary judgment, **DENY** Grigsby's cross-motion, and dismiss the case.[2]

## I.    BACKGROUND

### A.  Statutory and Regulatory Framework

Grigsby's lawsuit challenges the process by which a letter of reprimand was placed in his permanent military record. The procedures governing the reprimand process depend on the interaction of the recipient's rank and status at the time of the reprimand and the type of officer issuing the reprimand. This section lays out the statutory and regulatory framework governing the reprimand process and the role of the ABCMR in correcting military records.

#### 1.  Procedures for Filing Unfavorable Information in Official Personnel Files

Grigsby's challenge revolves around the correct application of Army Regulation 600-37, which governs the process by which "unfavorable information" is included in "official personnel files." Army Reg. 600-37 ¶ Summary (Dec. 19, 1986).[3] The official military personnel file (referred to in Army Regulation 600-37 and hereinafter as the OMPF) is the permanent file within the Army Military Human Resources Record for soldiers (active and inactive), retirees, veterans, and deceased personnel that documents facts related to a soldier during their entire Army career, from the time of accession into the Army until final separation, discharge, or retirement. *See* Army Reg. 600-8-104 ¶ 1-6(b) (Apr. 7, 2014). Unfavorable personnel information to be included in the

---

[2] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

[3] Army Regulation 600-37 was revised on April 10, 2018, and again on October 2, 2020, which is the current version. Unless otherwise stated, any reference to Army Regulation 600-37 in this opinion refers to the 1986 version in effect when the letter of reprimand was filed and at the time Grigsby requested that the ABMCR remove the letter.

OMPF includes information indicative of substandard leadership ability, promotion potential, morals, integrity, or other unfavorable character traits of a permanent nature. *See* Army Reg. 600-37 ¶ 3-2(c).

This case deals with a specific category of unfavorable information: a nonpunitive administrative letter of reprimand, referred to as a general officer memorandum of reprimand (GOMOR) when issued by a general officer. *See* Army Reg. 600-37 ¶ 3-4. The term "general officer" refers to an Army officer with the grade of general, including general, lieutenant general, major general, or brigadier general. *See* 10 U.S.C. § 101(b)(4). In the U.S. Army and the U.S Army Reserve, the rank of commissioned officers, from superior to inferior is general, lieutenant general, major general, brigadier general, colonel, lieutenant colonel, major, captain, first lieutenant, then second lieutenant. *See* 10 U.S.C. §§ 741, 7151, 12202.

Army Regulation 600-37 provides that an administrative letter of reprimand such as a GOMOR may be filed in one of two places: (1) the "military personnel records jacket," which is for temporary reprimands that remain in the record for no more than three years, or (2) directly to the OMPF, which holds the individual's permanent records and where the letter remains filed until removed through separate procedures discussed below. Army Reg. 600-37 ¶ 3-4(a), (b). For a commissioned officer, a range of individuals may issue and file a letter of reprimand in the officer's temporary military personnel records jacket, including (a) the "recipient's immediate commander or a higher level commander in the chain of command," (b) an individual designated to rate the recipient under the officer evaluation reporting system, or (c) "[a]ny general officer (to include one frocked to the rank of brigadier general) who is senior to the recipient or an officer who exercises general court-martial jurisdiction over the recipient." *Id.* ¶ 3-4(a)(2). Filing of a reprimand in the permanent OMPF is limited to a smaller subset of authorities. It may be done

"only upon the order of a general officer (to include one frocked to the rank of brigadier general) senior to the recipient or by direction of an officer having general court-martial jurisdiction over the individual." *Id.* ¶ 3-4(b).

Before a reprimand is filed in the permanent OMPF, the issuing authority must give the recipient an opportunity to review the proposed filing and offer a statement in rebuttal, explanation, or mitigation. *See* Army Reg. 600-37 ¶¶ 3-2(a), 3-6. The issuing authority must consider the recipient's response prior to including the information in the OMPF. *Id.* In addition to offering the opportunity to provide a statement in rebuttal or in defense, the letter of intent must also explicitly state that the reprimand is intended as an administrative measure and not as punishment under Article 15 of the Uniform Code of Military Justice. *See id.* ¶ 3-4(b)(2).

The regulations also address what happens if misconduct is discovered by a "former commander." In such cases, the former commander "may" (1) "[s]end pertinent information to the individual's current commander for action," or (2) "[p]ersonally initiate" the reprimand process "as if the former command or supervisory relationship continued," and "further review (if needed) will be accomplished in the recipient's current chain of command." Army Reg. 600-37 ¶ 3-4(d)(3)(a)–(b).

Finally, while Army Regulation 600-37 does not explicitly state that its provisions apply to military retirees, the regulation provides that it applies to "all officer and enlisted personnel in the . . . U.S. Army Reserve (USAR)." Army Reg. 600-37 ¶ Applicability. The U.S. Army Reserve contains within it a Ready Reserve, a Standby Reserve, and a Retired Reserve, *see* 10 U.S.C. § 10141(a), and every reservist is assigned to one of those categories. The Retired Reserve consists of "Reserves who have been transferred to the Retired Reserve," as well as "regular or reserve commissioned officer[s] of the Army" who have been retired by the Secretary of the Army after

at least 20 years of service, at least 10 years of which had been active service as a commissioned officer. 10 U.S.C. § 10154; *id.* § 7311(a).

### 2. Procedures for Review of Unfavorable Information and Removal from Personnel Files

Army regulations also lay out procedures for appealing or correcting unfavorable information filed in the OMPF. Appeals for the removal of unfavorable information from the OMPF must be directed to the Department of the Army Suitability Evaluation Board (DASEB). *See* Army Reg. 600-37 ¶ 7-1. Once a document has been filed in the OMPF, it is "presumed to be administratively correct and to have been filed pursuant to an objective decision by competent authority." *Id.* ¶ 7-2(a). The appellant to the DASEB has the burden of proving with clear and convincing evidence "that the document is untrue or unjust, in whole or in part," and warrants modification or removal from the OMPF. *Id.* "Appeals submitted by [Army Reserve] officer[s] and enlisted personnel not on active duty are normally processed through the Commander [of the] Army Reserve Personnel Center," who will refer the appeal to the Deputy Chief of Staff for Personnel with a recommendation. *Id.* ¶ 7-3(b)(1). "The DASEB will then review and evaluate the appeal." *Id.*

If the DASEB takes no action on the unfavorable information, the information can only be removed from the recipient's OMPF by action of the Army Board for Correction of Military Records (ABCMR). *See* Army Reg. 600-37 ¶ 7-6. The ABCMR, acting on behalf of the Secretary of the Army, is empowered to "correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). An individual may apply for the correction of their military records only after all means of administrative appeal have been exhausted, including an appeal to the DASEB. *See* Army Reg. 600-37 ¶ 7-6. "[S]oldiers or former soldiers" of the Army and Army Reserve may apply to the

ABCMR to correct their military record "within 3 years after an alleged error or injustice is discovered or reasonably should have been discovered." Army Reg. 15-185 ¶¶ 2-3(b), 2-4 (Mar. 31, 2006). The ABCMR is "not an investigative body" and decides cases "on the evidence of record." 32 C.F.R. § 581.3(c)(2)(iii). It also begins each case with a "presumption of administrative regularity," and it is the applicant's burden to prove an error or injustice by a preponderance of the evidence. Army Reg. 15-185 ¶ 2-9. "If persuaded that material error or injustice exists, and that sufficient evidence exists on the record," the ABCMR will "direct or recommend changes in military records to correct the error or injustice." 32 C.F.R. § 581.3(b)(4)(ii). Conversely, the ABCMR will "[d]eny applications when the alleged error or injustice is not adequately supported by the evidence, and when a hearing is not deemed proper. *Id.* § 581.3(b)(4)(iv).

## B. Factual and Procedural Background

Plaintiff Scott D. Grigsby is a former commissioned officer of the U.S. Army Reserve. ECF 14-3 ¶ 1.[4] He had a multi-decade career in the U.S. Army, and as is relevant to this action, served as an active-duty member of the Army Reserve from September 2001 until his retirement on October 1, 2009. *Id.* ¶ 2; ECF 14-7 at 4, 24; ECF 39-2 at 6. In 2005, Grigsby was assigned as director of the Warrior and Family Assistance Center in the U.S. Army Reserve Command. ECF 14-3 ¶ 3. He was also promoted to colonel in February 2005. *Id.* ¶ 4. In 2008, the Warrior and Family Assistance Center was placed under the umbrella of the Army Reserve Family Programs Directorate (ARFPD). *Id.* ¶ 5. Grigsby served as the interim director of ARFPD from May 2008 through October 2008. *Id.* Although not included in the administrative record excerpts

---

[4] Unless otherwise noted, the facts are drawn from the Parties' statements of material facts that are undisputed, *see* ECF 14-3; ECF 18-2; ECF 27-2, and excerpts of the administrative record that have been submitted to the Court, ECF 14-7; ECF 14-8; ECF 39-2.

filed with the Court, Grigsby's complaint asserts that while serving as interim director of the ARFPD from May 2008 through October 2008, he received overwhelmingly positive reviews from his supervisors. ECF 4 ¶ 4–5.

On October 1, 2009, Grigsby was honorably released from active duty and retired, having completed sufficient service for Reserve retirement. ECF 14-3 ¶ 6; ECF 14-7 at 4; ECF 39-2 at 9. In May 2010—after Grigsby retired—the U.S. Army Reserve Command learned that the ARFPD had received various services from June 2008 to June 2009 provided by a private company, Odyssey Marketing, that were not included in Odyssey's pre-existing contract with the Warrior and Family Assistance Center. ECF 14-3 ¶ 7; ECF 14-8 at 8. At the time of the discovery, Brigadier General William J. Gothard was the Deputy Commanding General for Support and Chief of Staff of U.S. Army Reserve Command. ECF 14-3 ¶ 9; ECF 14-7 at 20; ECF 14-8 at 1. On August 13, 2010, Gothard appointed an officer, Colonel Rafael Torres, to investigate ARFPD's suspected unauthorized contract with Odyssey. ECF 14-3 ¶ 9; ECF 14-8 at 1. Torres's investigation involved review of Odyssey's contracting history with the Warrior and Family Assistance Center and ARFPD, as well as interviews with Grigsby and others. ECF 14-8 at 7–21.

On November 19, 2010, Torres submitted his findings in a report to Gothard. ECF 14-8 at 7–19. Torres found that ARFPD began receiving unauthorized services from Odyssey in June 2008, and those services continued through Grigsby's tenure as ARFPD's interim director. *Id.* at 10. Torres found that Grigsby, while interim director, had failed to exercise supervisory oversight over contracts under ARFPD at the time, leading to a climate where subordinates made contractual decisions for him without his consent or knowledge. *Id.* at 9–10. Additionally, the contracting officer whom Grigsby supervised had verbally authorized Odyssey's additional services, but neither she nor Grigsby were "fully aware of the requirements for entering a contract before

authorizing services." ECF 14-8 at 12. The investigation report noted that Grigsby, as interim director, was the only one able to authorize services for ARFPD, and that he authorized the ARFPD's receipt of services from Odyssey either "implicitly, explicitly, or by leadership default." *Id.* at 11. Torres found that Grigsby's actions represented a lack of oversight and leadership while serving as ARFPD interim director, but he stated that he did not recommend "any form of disciplinary action" against Grigsby, given that the "incident did not come to light until COL Grigsby had long retired," and the "vague, sometimes contradictory, or selective" recollection of the events by those involved. *Id.* at 19. On March 21, 2011, Brigadier General Gothard approved the investigation's findings. *Id.* at 6. However, Gothard modified Torres's recommendation regarding disciplinary action to read: "I recommend that the Command take appropriate administrative action against COL (Ret) Grigsby." *Id.* at 6.

Then, on June 2, 2011, Gothard issued a GOMOR to Grigsby, which Grigsby received by email. ECF 14-7 at 19, 25. In the letter of reprimand, Gothard stated that Grigsby had shown a "reprehensible and egregious lack of oversight and leadership" while ARFPD interim director, and that as a "result of [Grigsby's] incompetence, Odyssey provided services totaling approximately $1 million without a valid contract." *Id*. at 19. Gothard added, "I impose this reprimand as an administrative measure and not under provisions of Article 15, Uniform Code of Military Justice." *Id.* The GOMOR stated that Gothard was considering filing the letter in Grigsby's permanent official military personnel file and gave him notice of his right to submit statements of rebuttal and in his defense within seven days of receipt of the reprimand. *Id.*

On June 7, 2011, Grigsby responded to Gothard. *Id.* at 24. Grigsby acknowledged that he "lacked the skills requisite for this position" and "accept[ed] full responsibility for the actions of" his subordinates. *Id.* However, he disputed the report's finding that he attempted to place the blame

for the contracting issues on others. *Id.* Grigsby also requested that Gothard not place the GOMOR in his permanent record. *Id.* Gothard did not heed the request, and on June 28, 2011, Gothard ordered that the GOMOR be filed in Grigsby's permanent personnel file. ECF 14-7 at 21–22.

On November 6, 2012, Grigsby filed an application *pro se* to the ABCMR requesting that the GOMOR be removed from his OMPF. ECF 14-7 at 12–16. Grigsby raised a number of complaints regarding the process by which Gothard issued the GOMOR. Grigsby argued he was "not informed of BG Gothard's final decision to post" the letter to his personnel file and was "[a]dministratively . . . denied the chance to rebut through USARC legal channels the decision to post" the letter. *Id.* at 15. Further, he claimed he never received the "two documents submitted . . . notifying" him of the letter being placed in his personnel file. *Id.* Per Grigsby, the "entire matter was handled in an unprofessional and mean-spirited manner unbecoming of the USARC." *Id.* Substantively, Grigsby challenged the GOMOR as "uncalled for:" He claimed that the "contract in question was purposely kept from" him and that he "never signed a single document nor approved a payment or increase in services and in fact, the wool was pulled over [his] eyes and the eyes of the other four acting directors." *Id.* But, he added, he "was the only one issued [a reprimand] since [he] was the only retired mobilized Reserve Officer at the time the investigation was initiated. They needed a scapegoat and pinned [him] . . . since [he] was the easiest target." *Id.* Grigsby noted that he had served for thirty years without ever receiving a reprimand, and that the GOMOR came "2 years after [he] retired for an incident in which [he] was NOT complicit." *Id.* He concluded that "[a]n injustice ha[d] been committed on the part of those in desperate need to pin the blame on someone." *Id.*

The ABCMR denied Grigsby's application for correction on June 29, 2013. ECF 14-7 at 1–10. The ABCMR found that the evidence in the record showed that Grigsby received a GOMOR

in June 2011 as the result of an investigation that found poor oversight, leadership, and incompetence while serving as interim director of ARFPD. *Id.* at 10. As regards the process by which Grigsby received the GOMOR and the placement of the GOMOR in his permanent file, the ABCMR concluded that Grigsby was afforded the opportunity to review the evidence against him and to submit matters on his own behalf prior to a final filing decision. *Id.* The ABCMR identified Army Regulation 600-37 as governing the process for issuing and filing a GOMOR. *Id.* at 9. The ABCMR noted that Grigsby's response to the GOMOR was received and considered before the GOMOR was filed to his permanent record. *Id.* at 10.

Addressing Grigsby's procedural complaints, the ABCMR acknowledged Grigsby's claim that he was not aware of the final filing decision and that he was "denied the chance to submit a rebuttal to the decision" through "U.S. Army Reserve Command (USARC) legal channels," which the ABCMR also paraphrased as a claim that Grigsby was "denied the opportunity to appeal the final decision." ECF 14-7 at 3, 10. However, the ABCMR noted that Grigsby's record contained a memorandum addressed to him notifying him of Gothard's final decision to file the GOMOR. *Id.* at 10. Addressing the rebuttal or appeal process, the ABCMR stated that "after a decision is made by a general officer to file a reprimand in a Soldier's [permanent official military personnel record], there is no process or requirement for the Soldier to appeal the decision to a higher authority." *Id.* The ABCMR concluded that the GOMOR was properly administered in accordance with applicable regulations, was properly filed in his permanent official military personnel file, and found no evidence of any error or an injustice. *Id.*

Grigsby then filed his complaint in this case, which he subsequently amended. *See* ECF 4. Grigsby claims that the ABCMR's decision was arbitrary and capricious, unsupported by substantial evidence, not in accordance with law and Army regulation, and otherwise an injustice.

10

The case is before the Court on the Parties' cross-motions for summary judgment and memoranda in support, ECF 14; ECF 18; ECF 27; ECF 29, as well as supplemental memoranda on additional issues requested by the Court, ECF 39; ECF 40.

## II.    LEGAL STANDARD

Summary judgment should be granted when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "However, in cases involving review of agency action under the Administrative Procedure Act . . . Rule 56 does not apply due to the limited role of a court in reviewing the administrative record." *Bennett v. Wormuth*, No. 19-cv-0131, 2023 WL 2682112, at *9 (D.D.C. Mar. 29, 2023). When parties seek review of agency action under the APA, the district court sits as an appellate tribunal. *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "The function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Citizens for Resp. & Ethics in Washington v. SEC*, 916 F. Supp. 2d 141, 145 (D.D.C. 2013).[5]

The ABCMR's "[d]ecisions regarding the correction of military records" are generally "reviewable under the arbitrary and capricious standard of APA § 706." *Coburn v. McHugh*, 679 F.3d 924, 929 (D.C. Cir. 2012). Under section 706(2) of the APA, a court "shall 'set aside' the ABCMR's 'action, findings, and conclusions' regarding the correction of military records if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014) (citing 5 U.S.C. § 706(2)(A)).

---

[5] Defendant objects to Grigsby's filing of evidence as part of his summary judgment appendices that was not part of the administrative record in this case. ECF 27 at 9. In an APA case, parties are not allowed to supplement the record with evidence that was not part of the "pleadings, evidence, and other parts of the proceedings before the agency," Fed. R. App. P. 16(a), "unless they can demonstrate unusual circumstances justifying a departure from this general rule," *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008). Grigsby has not moved to supplement the record in this case. The Court's review is thus limited to "the whole record or those parts of it cited by a party." *Id.* (citing 5 U.S.C. § 706).

Under this standard, decisions by boards like the ABCMR need not "be a model of analytic precision to survive a challenge," *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995), but they "must be supported by reasoned decisionmaking," *Haselwander*, 774 F.3d at 996. Further, a military records correction board acts arbitrarily when it does not respond to an applicant's arguments that "do not appear frivolous on their face and could affect the Board's ultimate disposition." *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997); *see Jenkins v. Speer*, 258 F. Supp. 3d 115, 124 (D.D.C. 2017). Such arguments include arguments about inadequacy of notice, *see Appleby v. Harvey*, 517 F. Supp. 2d 253, 266 (D.D.C. 2007), *aff'd sub nom.*, *Appleby v. Geren*, 330 F. App'x 196 (D.C. Cir. 2009), and claims that a military board has failed to "follow its own regulations," *Frizelle*, 111 F.3d at 177; *see Harvey*, 517 F. Supp. 2d at 270 (noting that judicial review of a military records correction board decision includes whether "there has been substantial compliance with applicable statutes and regulations"). Finally, when a military records correction board "fails to correct an injustice clearly presented in the record before it, it is acting in violation of its statutory mandate under 10 U.S.C. § 1552," and "such a violation, contrary to the evidence, is arbitrary and capricious." *Haselwander*, 774 F.3d at 996.

The D.C. Circuit has emphasized that military boards like the ABCMR receive the benefit of an "unusually deferential application of the arbitrary or capricious standard." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). However, this exaggerated deference does not apply in all cases. The court "differentiates between 'military judgment requiring military expertise,'" like a personnel decision, "which should be reviewed under the 'unusually deferential' standard, and 'review of the Board's application of a procedural regulation governing its case adjudication process,' which is reviewed under the traditional arbitrary and capricious APA

standard." *Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 162 (D.D.C. 2011) (quoting *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005)).

## III.   ANALYSIS

Although Grigsby's summary judgment briefing is not a model of clarity, the Court understands him to make three arguments as to why the decision of the ABCMR should be set aside. All relate to the process by which Grigsby received the GOMOR and Grigsby's status as a retired officer when the GOMOR was filed to his OMPF. First, Grigsby argues that Brigadier General Gothard was not authorized to issue a GOMOR to him under Army Regulation 600-37 ¶ 3-4(b) because Gothard did not have the proper "duty relationship" to Grigsby. ECF 18-1 at 18. Grigsby contends that only a general officer with a supervisory or command relationship with the recipient and within the recipient's current chain of command may issue a GOMOR, and no such relationship existed between Gothard and Grigsby. *Id.* Second, Grigsby argues that as a retired officer, he was entitled to additional procedural protections under Army Regulation 600-37 ¶ 3-4(d), such that Gothard was required to forward the GOMOR to a "successor commander" for additional review and consultation before posting it to his permanent file. ECF 18-1 at 17; ECF 29 at 10. Finally, Grigsby argues that the GOMOR was issued improperly because it was untimely. ECF 18-1 at 21.

The Court rejects Grigsby's challenges. Grigsby has waived these procedural arguments, which were not presented to the ABCMR in the first instance. Nor do these arguments show that the ABCMR acted arbitrarily and capriciously by failing to "correct an injustice clearly presented in the record." *Haselwander*, 774 F.3d at 996. The ABCMR did not act contrary to the APA when it found, on the record before it, that the GOMOR was properly administered in accordance with applicable regulations.

13

### A. Duty Relationship

The Court first addresses Grigsby's argument that Brigadier General Gothard was not authorized to issue a GOMOR to Grigsby because he and Gothard lacked the proper duty relationship. Grigsby's reading of Army Regulation 600-37 is that a letter of reprimand like a GOMOR may only be issued and filed to the OMPF by a general officer that had a prior or current command or supervisory relationship with the recipient. ECF 18-1 at 18. Grigsby asserts that Gothard "occupied no duty relationship" with Grigsby, such that Gothard was "not his commander," did not "exercise general court-martial convening over him," and was "not his supervisor or rater." *Id.* Defendant does not argue that Grigsby and Gothard's relationship met these criteria. *See* ECF 14-2 at 17–19. Instead, Defendant argues that the only relationship required by Army Regulation 600-37 is that the issuer be a general officer who is senior to the recipient. Defendant also argues that Grigsby waived his argument by failing to present it to the ABCMR in the first instance.

The Court agrees that Grigsby has waived this argument. "[I]ssues not raised before an agency are waived and will not be considered by a court on review." *Coburn*, 679 F.3d at 929; *Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 562 (D.C. Cir. 2002); *Bland v. Sec'y of Army*, No. 05-cv-2143, 2007 WL 902302, at *2 (D.D.C. Mar. 23, 2007) (applying this rule to district court review of an ABCMR decision). A litigant in district court is thus typically "barred" from "[i]ntroducing a new argument on review of the decision" of the ABCMR. *Jenkins*, 258 F. Supp. 3d at 131. This rule is tempered by the principle that the ABMCR and the reviewing district court should "take pains to protect the rights of *pro se* parties against the consequences of technical errors," and hold *pro se* litigants to "less stringent standards than those who are counseled by attorneys." *Calloway*

*v. Brownlee*, 366 F. Supp. 2d 43, 55 (D.D.C. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

Even when construed liberally, Grigsby's *pro se* application to the ABCMR does not raise the issue of whether Brigadier General Gothard lacked the authority to issue a GOMOR to him in the first place. While Grigsby states that the GOMOR was "uncalled for," an "injustice," and "handled in an unprofessional and mean-spirited manner unbecoming of the USARC," none of these can be reasonably construed as an argument that Gothard was not the type of officer who had the authority to issue Grigsby a reprimand. ECF 14-7 at 15–16. At most, Grigsby's application raises procedural issues about whether he was notified of Gothard's final decision and given the ability to rebut the allegations either to Gothard or to a subsequent authority. *See id.* at 15 (claiming that Grigsby was "[a]dministratively . . . denied the chance to rebut through USARC legal channels the decision to post" the letter to his file, and that the documents notifying him of the filing decision were "never sent"). While these procedural complaints may relate to the manner in which Gothard imposed the reprimand, they do not touch on, let alone "necessarily implicate[]," the more foundational challenge that Gothard was not a proper person to issue a reprimand to Grigsby or to file it to his OMPF. *Haselwander*, 774 F.3d at 997 (citing *NetworkIP, LLC v. FCC*, 548 F.3d 116, 122 (D.C. Cir. 2008)). This is thus not a case where waiver should be excused because the ABCMR ignored the "full extent of [Grigsby's] argument," *DHS v. Fed. Lab. Rels. Auth.*, 751 F.3d 665, 670 (D.C. Cir. 2014), or where the issue "was necessarily implicated in agency proceedings." *Haselwander*, 774 F.3d at 997.

Grigsby raises one final escape hatch to overcome waiver. Citing to the D.C. Circuit's decision in *Haselwander v. McHugh*, he argues that his failure to raise this issue to the ABCMR would not bar the Court from vacating a decision that was contrary to the ABCMR's statutory

charge to "correct an injustice clearly presented in the record before it." 774 F.3d at 996 (citing 10 U.S.C. § 1552). In essence, he argues that the issue of Gothard's authority to issue a GOMOR was so obvious on the record before it that the ABCMR should have addressed it *sua sponte* and resolved the issue in his favor. ECF 29 at 15.

Grigsby's argument fails because nothing in the record suggested, let alone "clearly presented," that Brigadier General Gothard was unable to issue a GOMOR to Grigsby. Indeed, an injustice is not clear in the record because the text of Army Regulation 600-37 ¶ 3-4(b) is "incompatible with Mr. [Grigsby]'s proposed interpretation of the regulations." *Krzywicki v. Del Toro*, 755 F. Supp. 3d 1, 12 (D.D.C. 2024). The regulation provides that a letter of reprimand may be filed in the officer's OMPF "only upon the order of a general officer (to include one frocked to the rank of brigadier general) senior to the recipient or by direction of an officer having general court-martial jurisdiction over the individual." Army Reg. 600-37 ¶ 3-4(b). Under the plain language of the regulation, the only relationship required is that the filing authority be either a general officer who is senior to the recipient or an officer who exercises court-martial jurisdiction over the recipient. *See id.*

Grigsby protests that to allow any general officer to issue a GOMOR to a lower-ranking officer, regardless of command, supervisory, or court-martial relationship, would undermine the "chain of command," by allowing a general officer without direct involvement in a soldier's discipline to interfere with a "commander's ultimate, undelegated authority." ECF 18-1 at 17–18. In support of his view that the GOMOR filing authority be interpreted narrowly to respect the chain of command, Grigsby also points to the fact that Army Regulation 600-37 was amended in 2018 to provide limitations on the types of general officers that may file a letter of reprimand to an officer's permanent record. ECF 18-1 at 18; *see* Army Reg. 600-37 ¶ 3-5(b) (Apr. 10, 2018)

(stating that, among other requirements, the general officer must be "in the same military status as the recipient"). Grigsby claims that the changes made by the 2018 version should be retroactively applied to his case. ECF 29 at 25.

Grigsby's counterarguments are not persuasive. First, the 2018 version of the regulation is inapplicable. There is no language in the amended regulation indicating that it is meant to be applied retroactively. *See Robbins v. Bureau of Nat'l Affs., Inc.*, 896 F. Supp. 18, 21 (D.D.C. 1995) ("Regulations, like statutes, cannot be applied retroactively absent express direction to do so."). More problematic for Grigsby is that the 2018 regulation was not in force when Grigsby brought his application to the ABCMR, and on APA review the agency cannot be faulted for failing to apply a version of the regulation that did not exist at the time. *Code v. McCarthy*, 959 F.3d 406, 415 (D.C. Cir. 2020) (reiterating that the error or injustice must be clearly presented "in the record before" the ABCMR). Second, Grigsby's policy arguments based in a concern for the chain of command are undermined by other sections of the 1986 regulation. The provision governing who may issue and file a reprimand in the officer's temporary military personnel record jacket lists, as separate filing authorities, "[t]he recipient's immediate commander or a higher level commander in the chain of command," Army Reg. 600-37 ¶ 3-4(a)(2)(a), and "[a]ny general officer (to include one frocked to the rank of brigadier general) who is senior to the recipient," *id.* ¶ 3-4(a)(2)(c). That the regulations treat an "immediate commander or a higher level commander" and "any general officer . . . who is senior to the recipient" as two separate sources of filing authority in ¶ 3-4(a) supports the Secretary's reading that the general-officer filing authority in ¶ 3-4(b) is distinct and independent from a command-chain based filing authority.

The regulation in force when Gothard issued the GOMOR thus permitted any general officer senior to a commissioned officer to file a letter of reprimand in the permanent personnel

file. The record demonstrates that at the time he issued the letter of reprimand, Brigadier General

Gothard was a general officer (brigadier general) in the U.S. Army Reserve Command. ECF 14-3

¶ 9; 14-7 at 7. Gothard issued the reprimand under his authority as a general officer, given that it

was described as a "GOMOR." ECF 14-7 at 26; *see also id.* at 3 (describing the reprimand as a

"general officer memorandum of reprimand"). The record also reflects that Grigsby, despite his

retired status, was still a member of the U.S. Army Reserve for the purposes of Army Regulation

600-37.[6] The regulation states that it applies to the "U.S. Army Reserve." Army Reg. 600-37

¶ Applicability. The U.S. Army Reserve is one of the seven "reserve components of the armed

forces," 10 U.S.C. § 10101, and encompasses "all Reserves of the Army who are not members of

the Army National Guard of the United States," *id.* § 10104, one element of which is the "Retired

Reserve," *id.* § 10154. The record shows that Grigsby was transferred from active duty to the U.S.

Army Reserve Command on September 30, 2009, and in his application to the ABCMR in 2012

he described himself as a "Grey Area Retired Reserve." ECF 14-7 at 13; ECF 39-2 at 9. As a U.S.

Army Reserve general officer senior to Grigsby, Gothard had the authority to issue a GOMOR to

Grigsby. *See* 10 U.S.C. §§ 741, 7151 (noting that a brigadier general outranks a colonel in the

Army); *id.* § 12202 (providing that reserve commissioned officer grades are the same as those

authorized for regular commissioned officers). Grigsby's "duty relationship" argument fails to

identify an error or injustice, let alone one that was "clearly presented in the record," and provides

no basis to find that ABCMR's decision violated the APA. *Haselwander*, 774 F.3d at 996.

---

[6] The Parties agree that Grigsby, despite his retirement, remained a member of the U.S. Army Reserve such that Army Regulation 600-37 governed his receipt of the GOMOR, *see* ECF 39; ECF 40, although they dispute exactly how its provisions should apply in his case.

**B.  Requirement that the GOMOR Be Forwarded to a Successor Commander**

In addition to challenging who may impose a GOMOR, Grigsby also challenges how the GOMOR was imposed. In his summary judgment briefs, Grigsby argues that before filing the GOMOR, Gothard was required to send the reprimand to the U.S. Army Human Resources Command for "impartial review or consultation." ECF 29 at 10.

Grigsby draws this purported requirement from Army Regulation 600-37 ¶ 3-4(d)(3), which addresses "[c]ircumstances affecting the imposition or processing of administrative letters of reprimand." Paragraph 3-4(d)(3) provides two options for a "former commander or supervisor who discovers misconduct warranting a reprimand." *Id.* First, the former supervisor or commander "may . . . [s]end pertinent information to the individual's current commander for action." *Id.* ¶ 3-4(d)(3)(a). Second, the former commander "may . . . [p]ersonally initiate and process a letter of reprimand . . . as if the former command or supervisory relationship continued." *Id.* ¶ 3-4(d)(3)(b). If the former commander initiates and processes the reprimand, "further review (if needed) will be accomplished in the recipient's current chain of command," and "[o]fficials should consider the timeliness and relevance of the adverse information before taking administrative action at the later date." *Id.*

Grigsby argues that as a member of the Retired Reserve, he had a "current chain of command"—the Human Resources Command, rather than the U.S. Army Reserve Command of which Gothard was a Brigadier General—which was required to receive and review the GOMOR before it was filed. ECF 29 at 10; ECF 18-1 at 17. Defendant again argues that Grigsby never presented this argument to the ABCMR, and that the argument fails on the merits because Grigsby, as a retiree, did not have a "current commander" or a "current chain of command" to which Gothard could have referred the GOMOR. ECF 27 at 12.

The Court agrees with the Secretary that Grigsby has also waived this argument. Grigsby's arguments on this issue bear little resemblance to any of the arguments that he made in his application to the ABCMR, even when construed liberally to account for his *pro se* status. *See* ECF 14-7 at 15–16. The closest Grigsby gets is when he claims that "[a]dministratively, . . . [he] was denied the chance to rebut through USARC legal channels the decision to post" the GOMOR to his personnel file. *Id.* at 15. Grigsby's application does not make clear what those "legal channels" were, but the next line of his application states that the "two documents . . . notifying me" of the GOMOR "being filed . . . were never sent and several phone calls to BG Gothard's office and the USARC [Staff Judge Advocate] requesting information in this regard were rudely received." *Id.*

Even construed liberally, Grigsby's application alleges at most that he did not receive appropriate notice of the GOMOR's filing. It cannot be construed as having presented an argument that another U.S. Army body outside of the U.S. Army Reserve Command—in Grigsby's view, Human Resources Command—should have independently reviewed the GOMOR before Gothard filed it. To find that Grigsby raised the issue of Human Resource Command's participation in review of the GOMOR would be contrary to the very language of the application: Grigsby clearly states that he was seeking additional review through "*USARC* legal channels" and through the "*USARC [Staff Judge Advocate]*," rather than through Human Resources Command.[7] *Id.*

---

[7] Grigsby's assertion that he was "[a]dministratively . . . denied the chance to rebut through USARC legal channels the decision to post" the letter could also be construed as an argument that he was denied the ability to appeal the GOMOR's filing. ECF 14-7 at 15. This is how the ABCMR construed it. *Id.* at 10 (stating that Grigsby claimed he was "denied the opportunity to appeal the final decision"). The ABCMR's response was that "after a decision is made by a general officer to file a reprimand in a Soldier's [permanent record], there is no process or requirement for the Soldier to appeal the decision to a higher authority." *Id.* Grigsby does not contest that conclusion in his counseled summary judgment briefing. Further, his counseled complaint explicitly concedes that as a retiree, he did not have the ability to appeal to the Department of the Army Suitability Evaluation Board (DASEB), which, under the then-current version of Army Regulation 600-37, heard "[a]ppeals and petitions for removal of unfavorable information" as an interstitial step before the ABCMR. Army Reg. 600-37 ¶ 7-1. Whether Grigsby was entitled to review by the DASEB

(emphasis added). This again is not a situation where the ABCMR "reasonably should have understood the full extent of [Grigsby's] argument" based on the limited scope of the procedural issues raised in his application. *Fed. Lab. Rels. Auth.*, 751 F.3d at 669–70. The Court declines to find that Grigsby presented this argument to the ABCMR.

Nor is this a case where, despite Grigsby's failure to adequately raise the issue, the ABCMR failed in its role "to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief" based on Grigsby's application and supporting documentation. *Haselwander*, 774 F.3d at 998. Even had the ABCMR been required, *sua sponte*, to consider the application of Army Regulation 600-37 ¶ 3-4(d)(3) to Grigsby, its application to him is not so obvious that it was an "injustice[] . . . clearly evidenced in the record." *Haselwander*, 774 F.3d at 997.

This is because Grigsby's reading is again in tension with the regulatory text. Army Regulation 600-37 ¶ 3-4(d)(3) states that it applies to situations where a "former commander or supervisor" discovers misconduct warranting a reprimand. But as discussed above, the provisions that set out which authorities may issue and file a letter of reprimand to a commissioned officer distinguish between reprimands issued on the basis of a chain-of-command relationship and those issued solely based on the issuer being a general officer senior to the recipient. *See* Army Reg. 600-37 ¶ 3-4(a)(2)(a), (c) (distinguishing between the "recipient's immediate commander or a higher level commander in the chain of command" and "[a]ny general officer . . . who is senior to the recipient" as two different sources of filing authority); *see also supra* Section III.A. The fact that ¶ 3-4(d) identifies the more limited category of "former commander or supervisor" indicates

---

before he proceeded to the ABCMR is thus not an issue before this Court. Further, the fact that the ABCMR did not reject Grigsby's application for failing to "exhaust[] all other administrative remedies," as required under Army Regulation 15-185 ¶ 2-8(b), indicates that Grigsby was not able to pursue a DASEB appeal and properly proceeded directly to the ABCMR.

that reprimands given by a general officer who is not necessarily acting as the recipient's "former commander or supervisor"—as was Gothard—are not covered by the provision. Further, even if Gothard's reprimand did fall within ¶ 3-4(d)(3) as a reprimand from a "former commander or supervisor," the text indicates that not all reprimands from the "former commander or supervisor" will necessarily be reviewed by the new chain of command. The regulation merely states that "further review (*if needed*) will be accomplished in the recipient's current chain of command." *Id.* (emphasis added).

Grigsby has not shown that ¶ 3-4(d)(3) applied to his case, let alone that the application of ¶ 3-4(d)(3) was "clearly presented in the record before" the ABCMR, and that the ABCMR's failure to address the impact of the provision was an injustice. *Haselwander*, 774 F.3d at 998. The ABCMR's determination that the "GOMOR was properly administered in accordance with applicable regulations" was thus reasonable on the record presented. ECF 14-7 at 10; *see Jenkins*, 258 F. Supp. 3d at 135 ("If the record contains such evidence that a reasonable mind might accept as adequate to support a conclusion, the court must accept the Board's findings."); *see also Harvey*, 517 F. Supp. 2d at 270 (noting that review of a military records correction board decision is limited to, among other things, determining whether "there has been substantial compliance with applicable statutes and regulations").

### C.  Timeliness of the GOMOR

Grigsby also claims that the issuance of the GOMOR was procedurally improper because it was "untimely." ECF 4 ¶¶ 32, 35; ECF 18-1 at 21. Again, Grigsby has waived this argument for failure to present it to the ABCMR. *See Coburn*, 679 F.3d at 929. As regards the GOMOR's timing, Grigsby stated in his application that out of all the "four acting directors" of ARFPD he was the "only one issued a [reprimand] since [he] was the only retired mobilized Reserve Officer at the

time the investigation was initiated." ECF 14-7 at 15. Grigsby noted that "the only [reprimand] EVER to be issued to me came about 2 years after I retired for an incident in which I was NOT complicit." *Id.* While Grigsby's application mentioned the timing of the GOMOR to the ABCMR, he raised it as an issue of substantive fairness, objecting that he was unfairly being singled out for blame given his retired status. His application cannot be construed as stating that because the conduct occurred two years prior, Gothard was procedurally barred from issuing a reprimand.

Nor do Grigsby's late-arising arguments regarding the timing of the GOMOR indicate that the ABCMR "fail[ed] to correct an injustice clearly presented in the record before it." *Haselwander*, 774 F.3d at 996. In his pleadings in this Court, Grigsby struggles to even articulate the nature of this purported timeliness limitation, further indicating that the alleged error was not clearly presented in the record before the ABCMR. He gestures towards a purported statute of limitations for issuance of a GOMOR, when he notes that Army Regulation 600-37 provides for the removal of a reprimand filed in the temporary military personnel records jacket after three years, *see* Army Reg. 600-37 ¶ 3-4(a)(3), and that there is a two-year statute of limitations for the imposition of nonjudicial punishment under Article 15 of the Uniform Code of Military Justice, *see* ECF 4 ¶ 32 (citing 10 U.S.C. § 843(b)(3)). But neither statute of limitations is applicable here. Gothard filed the GOMOR to Grigsby's permanent OMPF, which lacks a similar three-year time-limitation as the temporary military personnel records jacket. *See* Army Reg. 600-37 ¶ 3-4(a)(3), (b). And the two-year Article 15 statute of limitations does not apply to the GOMOR because Gothard expressly stated that he was not imposing discipline under Article 15. ECF 14-7 at 19.

Unable to identify a clearly applicable statute of limitations governing Gothard's ability to issue a GOMOR, Grigsby nevertheless argues that the timeliness of the GOMOR was governed by Army Regulation 600-37 ¶ 3-4(d)(3)(b), which requires that in the case of the issuance of a

reprimand by a "former commander," officials "should consider the timeliness and relevance of the adverse information before taking administrative action at a later date." *Id.*; *see* 18-1 at 21. As discussed above, that provision does not appear to govern Grigsby's case. *See supra* Section III.B. And even if that provision had been applicable here, the record demonstrates that the ABCMR did not err in finding a lack of procedural issues relating to the timing of the GOMOR. The record reflects that both the investigating officer and Brigadier General Gothard were aware of Grigsby's retirement and considered the appropriateness of issuing a reprimand several years after the incident. ECF 14-8 at 6, 19. The record shows that the ABCMR was also aware of Grigsby's retirement date, the timeline of the subsequent investigation, and Grigsby's claim that he was being unfairly singled out after his retirement. ECF 14-7 at 4–7. Notwithstanding that the ABCMR was not obligated to address a timeliness argument that was not raised by Grigsby, its conclusion that the GOMOR was properly filed and there was "no evidence of an error or an injustice," ECF 14-7 at 10, is "rationally connected to the facts it considered," *Jenkins*, 258 F. Supp. 3d at 135. The record supports the conclusion that the issuance of the GOMOR was timely and not a clear injustice. As to Grigsby's complaint that the GOMOR was issued after he had retired, the timeline reviewed by the ABCMR indicates that the investigation into the unauthorized contracts did not begin until August 2010, after Grigsby's retirement. ECF 14-8 at 1. The issuance of the GOMOR occurred less than a year later, in June 2011, a mere three months after Gothard reviewed the investigation report. ECF 14-7 at 20; ECF 14-8 at 6.

Accounting for the Secretary's "broad discretion in administering the correction of military records," *Haselwander*, 774 F.3d at 996, and this Court's "'narrow' standard of review" under the APA, the Court finds no reason to overturn the ABCMR's decision that the GOMOR was properly

issued on the basis of Grigsby's timeliness arguments, *Wilhelmus*, 796 F. Supp. 2d at 160 (quoting

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983)).

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary

judgment, ECF 14, and **DENIES** Grigsby's cross-motion for summary judgment, ECF 18.

A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: September 26, 2025